IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
August 12, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

| | |
|---|---|
| EASTWOOD ASSISTED LIVING INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 7:24-cv-00666 |
| SPRINT SPECTRUM LLC, | ) By: Elizabeth K. Dillon |
| | ) Chief United States District Judge |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Eastwood Assisted Living Inc. ("Eastwood") brings this action alleging a breach of contract claim against defendant Sprint Spectrum LLC ("Sprint"). Pending before the court is Sprint's motion to dismiss the complaint with prejudice for failure to state a claim. (Dkt. No. 9.) The matter has been fully briefed and is now ripe for disposition. Although Sprint has requested a hearing on this motion, the court finds that a hearing is not necessary to resolve the matter. *See* W.D. Va. Civ. R. 11(b). For the reasons stated herein, the court will grant Sprint's motion to dismiss insofar as it seeks dismissal, but the dismissal will be without prejudice.

I.   BACKGROUND[1]

On May 1, 1997, Friendship Manor entered into a Lease Agreement (hereafter "Lease Agreement," "the lease," or "the contract") with Virginia PCS Alliance LLC ("PCS"). (Compl. ¶ 1; Lease Agreement 7.) Among other things, the contract stated that Friendship Manor would lease rooftop space to PCS for the operation of telecommunications equipment. (Lease

---

[1] The factual allegations in this section are drawn from Eastwood's complaint (Compl. 3–6, Dkt. No. 1-1), the parties' Lease Agreement and amendments thereto (Lease Agreement 7–37, Dkt. No. 1-1) , and Sprint's notice of termination of the lease agreement (Termination Letter 38, Dkt. No. 1-1).

Agreement 7.)  Eastwood and Sprint became successors in interest to the contract through several assignments of interest.  (Compl. ¶¶ 2, 3; Lease Agreement 15.)

Two sections of the contract are relevant to this motion—Section II and Section IX.[2]  Section II establishes the initial term of the lease and provides for automatic renewal options:

> The initial term of the Lease shall be ten (10) years ("Initial Term[”]), commencing on May 1, 1997 ("Commencement Date"), and shall automatically be renewed, without need of further documentation, for four (4) additional five-year terms ("Renewal Terms") unless [Sprint] provides Owner with notice of its intention not to renew 90 days prior to the expiration of the Initial or then Renewal Term.

(Lease Agreement 28.)  Section IX provides the lessee with the right to terminate the lease under certain conditions:

> This Lease may be terminated as follows: (a) Upon one year written notice without penalty if, due to changed circumstances, [Sprint] determines that the Premises are no longer suitable for their intended purpose[.]"

(Lease Agreement 9.)

Pursuant to Section II, the initial lease term ran from May 1, 1997, through April 30, 2007.  (Compl. ¶ 7; Lease Agreement 28.)  Thereafter, the lease was set to automatically renew in five-year increments through the following terms: May 1, 2007–April 30, 2012; May 1, 2012–April 30, 2017; May 1, 2017–April 30, 2022; and May 1, 2022–April 30, 2027.  (*Id.*)  Because Sprint did not provide notice of its intent to terminate the lease prior to the end of the third renewal term, the lease automatically renewed for the five-year term beginning May 1, 2022, and ending April 30, 2027.  (Compl. ¶ 8.)

On February 22, 2023, Sprint sent Eastwood a written notice of termination, stating in

---

[2] Due to a typographical error in the contract, there are two provisions labelled with the roman numeral "IX."  The provision at issue in this case comes between Sections X and XII.  (Lease Agreement 9.)

2

relevant part: "**Pursuant to Section IX(a)** of the above-referenced Agreement, this letter serves as written notice that Tenant is terminating the Agreement, effective February 29, 2024." (Termination Letter; Compl. ¶ 9 (emphasis added).)  Sprint continued to pay rent through February 29, 2024.  (Compl. ¶ 10.)

On August 30, 2024, Eastwood filed a breach of contract action against Sprint in Virginia state court, alleging that Sprint breached the Lease Agreement by failing to pay rent due after February 29, 2024.  (*See* Compl.)  On September 27, 2024, Sprint removed the action to this court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  (Dkt. No. 1.)  Eastwood seeks $101,836.80 in unpaid rent and late fees, representing the amount it claims is owed through April 30, 2027.  (Compl. ¶¶ 11–15.)

## II.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's allegations must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  "[A] formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it.  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir.

3

2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

### III.  DISCUSSION

In its motion to dismiss, Sprint argues that Eastwood's breach of contract claim fails because Sprint properly exercised its clear contractual right under Section IX of the Lease Agreement to terminate the lease with one year's written notice. Sprint maintains that Eastwood ignores this explicit provision and instead demands rent payments through April 30, 2027, contrary to the plain language of the contract. (Br. Supp. Mot. to Dismiss 4–5, Dkt. No. 10.)

In response, Eastwood contends that it has adequately stated a claim for breach of contract based on Sprint's failure to provide the required 90-day notice of non-renewal, which resulted in an automatic extension of the lease through April 30, 2027. Eastwood further argues that Section IX conditions termination on both "changed circumstances" and a determination that "the Premises are no longer suitable for their intended purpose"—conditions that Sprint did not reference in its termination notice.[3] Eastwood denies that Sprint holds a unilateral right to terminate the lease under Section IX, and asserts that, at a minimum, the relevant contract terms are ambiguous and should be construed in its favor at this stage of the litigation. (Br. Opp'n Mot. to Dismiss 4–8, Dkt. No. 13.)

---

[3] Sprint discusses a change in circumstances in its motion to dismiss, noting that T-Mobile already operated a telecommunications facility on the roof of the Property prior to its merger with Sprint. As a result of the merger, T-Mobile was left with "two redundant and duplicative facilities." (Br. Supp. Mot. to Dismiss 2.) While this may suggest a change in circumstances sufficient to trigger the termination provision in Section IX of the lease, the alleged facts are not contained in the complaint, the Lease Agreement, or the Termination Letter. Accordingly, the court may not consider this information at the motion-to-dismiss stage, as its review is limited to the pleadings and documents attached thereto.

4

In its reply, Sprint reaffirms its position that Section IX unambiguously grants it the unilateral right to terminate the lease with one year's notice, without an obligation to justify or explain its determination. Sprint argues that the lease gives Eastwood no right to challenge its decision and that the contract language is clear in this regard. (Reply Supp. Mot. to Dismiss 2–8, Dkt. No. 17.)

To state a claim for breach of contract under Virginia law, a plaintiff must allege "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004). In this case, there is no dispute that Eastwood has adequately alleged the first element—the existence of a valid and enforceable contract. The dispute centers on the second element: whether Eastwood plausibly alleges a claim for breach by Sprint of its contractual obligations. According to the complaint and the attached Lease Agreement, Sprint was subject to the automatic renewal provision set forth in Section II, thereby extending the lease through April 30, 2027. That allegation appears to be undisputed by Sprint. Thus, the primary issue before the court is whether Eastwood sufficiently alleges a breach of Section IX of the Lease Agreement. The court finds that it does not.

Section IX states: "[t]his Lease may be terminated . . . Upon one year written notice without penalty if, due to changed circumstances, [Sprint] determines that the Premises are no longer suitable for their intended purpose[.]" (Lease Agreement 9.) On February 22, 2023, Sprint provided Eastwood with written notice terminating the lease effective February 29, 2024—just over one year's notice and citing to Section IX(a). (Termination Letter.) Nowhere does Section IX require Sprint to specify the particular changed circumstances that rendered the premises unsuitable. *See Patterson v. Nat'l Advert. Co.*, 193 S.E.2d 676, 678 (Va. 1973) (holding

5

that a notice to terminate a landlord-tenant relationship must be clear and unequivocal, and that in the absence of a contractual provision requiring particularity, such notice need not specify the grounds for termination to be effective). The plain language of Section IX grants Sprint the right to terminate the lease based on its own determination of changed circumstances.[4] Upon receiving proper notice, Eastwood was entitled to—and did receive—lease payments for a full year prior to the termination date. Indeed, the complaint acknowledges that Sprint paid rent through February 29, 2024. (Compl. ¶ 10.) In compliance with the Lease Agreement, Sprint provided the required one-year written notice of termination under Section IX, so no plausible breach of contract claim is alleged.

To the extent Eastwood alleges that Sprint acted in bad faith or violated the implied covenant of good faith and fair dealing in terminating the lease, such claims are not properly before the court. Eastwood alleges that, "[o]n or about February 22, 2023, citing Section IX(a) of the Agreement, Sprint issued a letter purportedly 'terminating the Agreement, effective February 29, 2024.'" (Compl. ¶ 9.) The Termination Letter confirms this allegation. (*See* Termination Letter.) While the court must construe all reasonable inferences in Eastwood's favor, this allegation alone is insufficient to reasonably infer bad faith by Sprint in invoking Section IX of the contract.

---

[4] To the extent Eastwood contends that Section IX is ambiguous, the court disagrees. "The mere fact that the parties disagree about the meaning of the contract's terms is not evidence that the contract language is ambiguous." *Pocahontas Mining LLC v. CNX Gas Co., LLC*, 666 S.E.2d 527, 531 (Va. 2008) (citations omitted). Section IX clearly permits the lessee to terminate the lease at any time during its term, provided the lessee determines that changed circumstances render the premises unsuitable for their intended purpose and gives one year's written notice to the lessor. The court declines to read into the contract a requirement that the lessee notify the lessor of the specific changed circumstances underlying the termination. Reading in such a requirement would be improper. *See RECP IV WG Land Investors LLC v. Cap. One Bank (USA), N.A.*, 811 S.E.2d 817, 825 (Va. 2018) ("We construe a contract as written, without adding terms that were not included by the parties. When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." (cleaned up) (citations omitted)).

The court's ruling is limited to the finding that Eastwood has failed to state a plausible breach of contract claim against Sprint. If Eastwood has additional allegations that could support a cognizable breach of contract claim—whether based on bad faith or other grounds—it may seek leave to amend the complaint to cure these deficiencies. As it currently stands, however, the complaint fails to state a claim upon which relief can be granted and will therefore be dismissed.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby ORDERED that Sprint's motion to dismiss (Dkt. No. 9) is GRANTED and Eastwood's complaint is DISMISSED WITHOUT PREJUDICE.

If Eastwood seeks to amend its complaint, it may file a motion for leave to do so within thirty (30) days after entry of this order. If Eastwood elects not to amend, it should waive its right to do so by requesting that the court enter final judgment to render its decision appealable. *See Britt v. DeJoy*, 45 F.4th 790, 796 (4th Cir. 2022) (en banc).

The Clerk is directed to send a copy of this memorandum opinion and order to all counsel of record.

Entered: August 12, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge