CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

June 30, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Hannah Warren
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| EASTWOOD ASSISTED LIVING INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 7:24-cv-00666 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| SPRINT SPECTRUM LLC, | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Eastwood Assisted Living Inc. ("Eastwood") moves for leave to file an amended complaint. (Dkt. No. 21.)  Sprint Spectrum LLC ("Sprint") opposes the motion.  (Dkt. No. 22.) Eastwood's amended complaint alleges additional facts sufficient to support a non-duplicative breach of contract claim based on the implied covenant of good faith and fair dealing (GFFD) in this diversity action.  Accordingly, the court will grant Eastwood's motion for leave to file its amended complaint.

## I.  BACKGROUND

In 1997, Virginia PCS Alliance LLC entered into a Lease Agreement (hereinafter, "Agreement") with Friendship Manor to lease rooftop space for PCS's operation of telecommunications equipment.  (Lease Agreement 7, Dkt. No. 1-1.)  Eastwood and Sprint are successors in interest to the contract.  (Dkt. No. 1 at ¶¶ 2, 3.)  The Agreement contains two sections relevant to this case: Sections II and IX.  Section II establishes the initial term of the lease and provides for automatic renewal options.  (Lease Agreement 28, Dkt. No. 1-1.)  Section IX[1] grants the lessee the right to terminate the lease under certain conditions:

---

[1] Because of a typographical error in the contract, there are two provisions labelled with the roman numeral "IX." The provision comes between Sections X and XII. (Lease Agreement 9, Dkt. No. 1-1.)

> This Lease may be terminated as follows: (a) Upon one year written notice without penalty if, due to changed circumstances, [Sprint] determines that the Premises are no longer suitable for their intended purpose[.]

(Lease Agreement 9, Dkt. No. 1-1.)

On February 22, 2023, Sprint sent Eastwood written notice of termination: "Pursuant to Section IX(a) of the above-referenced Agreement, this letter serves as written notice that Tenant is terminating the Agreement, effective February 29, 2024."  (Termination Letter, Dkt. No. 1-1; Compl. ¶ 9, Dkt. No. 1-1.)  Sprint continued to pay rent through February 29, 2024.  (Compl. ¶ 10, Dkt. No. 1-1.)

On August 30, 2024, Eastwood filed a breach of contract action against Sprint in Roanoke City Circuit Court, alleging that Sprint was in breach of the Agreement by failing to pay rent due after February 29, 2024.  (*See* Compl., Dkt. No. 1-1.)  Additionally, Eastwood alleged that Sprint failed to properly terminate the Agreement under Section II and that Sprint's purported termination under Section IX was improper because it did not follow the correct procedure: Sprint did not disclose what "changed circumstances" led to its determination that "the Premises [were] no longer suitable for their intended purpose."  (Dkt. No. 13 at 1; Compl. ¶¶ 6, 10, Dkt. No. 1-1.)  Eastwood sought damages in the amount of $119,665.00, plus pre- and post-judgment interest, additional late fees due and payable, reasonable attorneys' fees and expenses, and such other and further relief the court deems just and proper.  (Dkt. No. 21-1 at 6.)

Sprint removed the action to this court and filed a motion to dismiss under Rule 12(b)(6), arguing, "Eastwood's breach of contract claim fails because Sprint properly exercised its clear contractual rights under Section IX."  (Dkt. No. 20 at 3, 4.)  The court granted Sprint's motion, holding that there was no plausible breach of contract claim because the "plain language of Section IX grants Sprint the right to terminate the lease based on its own determination of

2

changed circumstances." (Dkt. No. 20 at 6.) The court held that "[t]he plain language of Section IX grants Sprint the right to terminate the lease based on its own determination of changed circumstances" and that "[n]owhere does Section IX require Sprint to specify the particular changed circumstances that rendered the premises unsuitable." (Dkt. No. 20 at 5–6.) The court reasoned that "a notice to terminate a landlord-tenant relationship must be clear and unequivocal, and that in the absence of a contractual provision requiring particularity, such notice need not specify the grounds for termination to be effective." (Dkt. No. 20 at 5–6 (citing *Patterson v. Nat'l Advert. Co.*, 193 S.E.2d 676, 678 (Va. 1973)).) The court dismissed Eastwood's suit without prejudice and held that "[i]f Eastwood ha[d] additional allegations that could support a cognizable breach of contract claim—whether based on bad faith or other grounds—it may seek leave to amend the complaint to cure these deficiencies." (Dkt. No. 20 at 7.)

Eastwood filed a motion for leave to file an amended complaint, purporting to include "additional allegations sufficient to state a claim for breach of contract against Sprint, based upon Sprint's breach of the implied covenant of good faith and fair dealing." (Dkt. No. 21 at ¶ 6.) Eastwood argues that "[r]ather than affording Sprint the right to terminate the lease for *any reason* upon written notice, the Lease expressly limits *the reason* for which Sprint may terminate the lease—Sprint must determine that changed circumstances render the Premises unsuitable for their intended purpose." (Dkt. No. 23 at 7–8.) Thus, Eastwood alleges that Sprint's exercise of its discretion was a breach of GFFD. That is, while Sprint had the right to terminate the lease "based on its own determination of changed circumstances," Eastwood now alleges that this determination was based on bad faith, in breach of GFFD.

Sprint responds that Eastwood is barred from filing the amended complaint because Virginia law does not allow a standalone claim for breach of GFFD. (Dkt. No. 22 at 4.)

3

Furthermore, Sprint argues that Eastwood's claim relies on facts that the court previously held

cannot support a claim for breach of contract, so, "[a]bsent additional allegations that Sprint

exercised bad faith in relation to another part of the contractual relationship . . . there are

insufficient allegations to sustain [Eastwood]'s claim for breach of contract under an implied

covenant of good faith theory." (Dkt. No. 22 at 3, 6.)  Sprint argues that Eastwood can neither

allege new facts nor bring a standalone claim to prevent the amended complaint from being

dismissed as futile.  (Dkt. No. 22 at 3.)

## II.  LEGAL STANDARDS

### A.  Amendment Standards

"[A] party may amend its pleading only with the opposing party's written consent or the

court's leave."  Fed. R. Civ. P. 15(a)(2).  Courts "should freely give leave when justice so

requires."  *Id.*  "Despite this general rule liberally allowing amendments, . . . a district court may

deny leave to amend if the amendment 'would be prejudicial to the opposing party, there has

been bad faith on the part of the moving party, or the amendment would have been futile.'"

*United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.,* 707 F.3d 451, 461 (4th Cir. 2013)

(quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)); *see Foman v. Davis*, 371

U.S. 178, 182 (1962).

An amendment is futile if it is "clearly insufficient or frivolous on its face."  *Johnson v.*

*Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).  "[D]istrict courts are free to deny leave

to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny."  *In re Triangle Cap.*

*Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021).  To survive a Rule 12(b)(6) motion to

dismiss, a plaintiff must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This

standard "requires the plaintiff to articulate facts, when accepted as true, that show that the plaintiff has stated a claim entitling him to relief, i.e., the plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).  The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it in determining whether the plaintiff has met this plausibility standard. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  It must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

## B.  Covenant of Good Faith and Fair Dealing

In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Daily v. White*, 520 F. Supp. 3d 835, 841–42 (W.D. Va. 2021) (quoting *Sunrise Continuing Case, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009)).  "[E]very contract contains an implied covenant of good faith and fair dealing; however, a breach of those duties only gives rise to a breach of contract claim, not a separate cause of action." *Vance v. Wells Fargo Bank, N.A.*, 291 F. Supp. 3d 769, 774 (W.D. Va. 2018) (quoting *Jones v. Fulton Bank, N.A.*, No. 3:13-cv-126, 2013 WL 3788428, at *7 (E.D. Va.

July 18, 2013)).  Put differently, a plaintiff may plead a breach of contract claim based on the implied covenant of GFFD, but it may not bring an independent action for breach of GFFD alone.  *Id.*; *see also Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605, 611–12 (4th Cir. 2021) (recognizing GFFD as theory of breach of contract in Virginia).

"A party breaches its GFFD duty in one of two ways."  *Fluor Fed. Sols., LLC v. BAE Sys. Ordnance Sys., Inc.*, No. 7:19-cv-00698, 2024 WL 4635304, at *83 (W.D. Va. Oct. 30, 2024); *see also Riggs Nat'l Bank of Washington v. Linch*, 36 F.3d 370, 373 (4th Cir. 1994) (discussing *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1152–55 (D.C. Cir. 1984)). "First, 'where a party has a clear contract right [to act a certain way], even if its exercise would arguably be arbitrary, that party is only forbidden from acting dishonestly.'"  *Fluor Fed. Sols.*, 2024 WL 4635304, at *83 (quoting *Stoney Glen, LLC v. S. Bank & Trust Co.*, 944 F. Supp. 2d 460, 466 (E.D. Va. 2013)). "Second, 'where a party has discretion in performance, that party cannot act arbitrarily or unfairly.'"  *Id.* (quoting *Stoney Glen*, 944 F. Supp. 2d at 466).

### 1.  Dishonest Conduct in the Exercise of Clear Contractual Rights

Good faith "is violated by dishonest conduct [in enforcing contract rights] such as conjuring up a pretended dispute, asserting an interpretation contrary to one's own understanding, or falsification of facts."  Restatement (Second) of Contracts § 205 cmt. e (1981); *see Montalla, LLC v. Commonwealth*, 900 S.E.2d 290, 300 n.13 (Va. 2024) (citing § 205 on GFFD); *Rsrv. at Winchester I, LLC v. R 150 SPRE, LLC*, No. 3:21-cv-00008, 2022 WL 2161518, at *6 (W.D. Va. June 15, 2022) (same); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999) (same).  Likewise, "evasion of the spirit of the bargain" is a "paradigmatic example of bad faith."  *Aimbridge Hosp., LLC v. Provident Group–Radford Props., LLC*, No. 7:24-cv-00262, 2024 WL 3534150, at *6 (W.D. Va. July 24, 2024) (citing § 205).  However, "[w]hile acting

6

'against usual and prudent business practices' may be arbitrary, it is not dishonest, and will not support a claim for breach of the implied covenant of good faith and fair dealing if the action is taken pursuant to an explicit contractual right." *Stoney Glen*, 944 F. Supp. 2d at 466 (quoting *Charles E. Brauer Co. v. NationsBank of Virginia, N.A.*, 466 S.E.2d 382, 386 (Va. 1996)).

In *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 451 (E.D. Va. 2009), the Eastern District held that the plaintiff had sufficiently alleged dishonest action where the defendant "purposefully failed to provide [the plaintiff] with a space flight and purposefully failed to inform him of the high likelihood of medical disqualification until after he had paid three or four payments that Defendant submits are non-refundable." These, the court said, were "not merely claims for Defendant's unfavorable exercise of its contractual rights" but sufficient allegations of "bad faith and unfair dealing in a contractual relationship." *Id.*

Conversely, in *Brainchild Surgical Devices, LLC v. CPA Global Ltd.*, 144 F.4th 238, 251–52 (4th Cir. 2025), the Fourth Circuit held that the defendant's estimate of total charges, pursuant to a contract, instead of breaking out their components, did not constitute dishonest conduct. The court reasoned that finding dishonesty in the defendant's contractual compliance would require the court "to write in additional disclosure obligations to an unambiguous contract," contrary to Virginia law. *Id.* at 252 (citing *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 493 S.E.2d 516, 520 (Va. 1997)).

## 2. Arbitrary or Unfair Exercise of Contractual Discretion

The implied covenant of GFFD may also be breached "where a party has discretion in performance" and exercises that discretion "arbitrarily or unfairly." *Stoney Glen*, 944 F. Supp. 2d at 466; *see also Aimbridge Hosp.,* 2024 WL 3534150, at *5–6. "[I]n Virginia, . . . although the duty of good faith does not prevent a party from exercising its explicit contractual *rights*, a

party may not exercise contractual *discretion* in bad faith, even when such discretion is vested solely in that party." *Va. Vermiculite Ltd. v. W.R. Grace & Co.-Conn.*, 156 F.3d 535, 542 (4th Cir. 1998); *see also Stansbury v. Fed. Home Loan Mortg. Corp.*, No. 7:16-cv-00516, 2017 WL 3821669, at *8 (W.D. Va. Aug. 31, 2017). If a defendant acted pursuant to valid contractual rights, then the plaintiff must demonstrate "sufficient evidence that these rights were exercised in bad faith." *Brainchild*, 114 F.4th at 251 (quoting *Wolf v. Fed. Nat'l Mortg. Ass'n*, 512 F. App'x 336, 345 (4th Cir. 2013) (per curiam) (unpublished opinion)); *see also Stoney Glen*, 944 F. Supp. 2d at 466 (citing *Iqbal*, 556 U.S. 662).

However, the covenant "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Makina Ve Kimya Endustrisis A.S. v. Zenith Quest Corp.*, No. 3:20-cv-00072, 2024 WL 3524023, at *6 (W.D. Va. July 24, 2024) (quoting *Ward's Equip.*, 493 S.E.2d at 520). The covenant also "does not relieve a party of the economic consequences of the terms to which it agreed." *Aimbridge Hosp.,* 2024 WL 3534150, at *5 (quoting *Drummond*, 3 F.4th at 612).

## III.  ANALYSIS

### 1.  The Amended Complaint Does Not Assert a Standalone Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Sprint relies on *Brainchild Surgical Devices* for the propositions that "Virginia law is clear that a party cannot bring a duplicative claim for breach of the implied covenant of good faith and fair dealing" (Dkt. No. 22 at 2 n.1 (citing 144 F.4th at 252)) and that Virginia law does not permit a claim "that simply duplicates a claim for an express breach of contract" (*id.* at 4 (quoting 144 F.4th at 252)).

But Eastwood does not bring a standalone GFFD claim; rather, it alleges a breach of contract *based on* GFFD. (*See* Dkt. No. 21-1 at ¶¶ 25–26.) This is a valid claim. *See In re Cap.*

*One 360 Sav. Acc. Int. Rate Litig.*, 779 F. Supp. 3d 666, 702–04 (E.D. Va. 2024); *RLI Ins. Co. v. Nexus Servs.*, No. 5:18-cv-00066, 2018 WL 4102256, at *5–6 (W.D. Va. Aug. 25, 2018); *Stoney Glen*, 944 F. Supp. 2d at 465–69; *Frank Brunckhorst Co. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 462 (E.D. Va. 2008).  And this claim is not duplicative.  Eastwood's original claim was on a theory of express material breach.  (Dkt. No. 1-1 at ¶ 14.)  Its amended claim is on a GFFD theory.  (Dkt. No. 23 at ¶¶ 25–26.)  They might draw on the same facts, but these claims assert different theories.  Therefore, Eastwood asserts a cognizable breach of contract claim.

2.  **The Amended Complaint Alleges Sufficient Facts to State a Plausible Claim for Breach of Contract on a Theory of Good Faith and Fair Dealing**

i.  **The Amended Complaint Does Not Plausibly Claim Dishonest Conduct in the Exercise of Clear Contractual Rights**

Eastwood does not plead sufficient facts to claim that Sprint breached its covenant of GFFD by dishonest conduct.  The amended complaint alleges that

> Sprint acted in dishonestly [sic] and in bad faith when it purported to terminate the lease under Section IX(a) of the Agreement, asserting that 'changed circumstances' rendered the Premises 'no longer suitable for their intended purpose' because T-Mobile continues to use the Premises to operate its telecommunications equipment and Sprint could do the same.

(Dkt. No. 21-1 at ¶ 25 (quoting Lease Agreement 9, Dkt. No. 1-1).)  But, while operating similar equipment on a premises after claiming that "changed circumstances" made the premises "no longer suitable for their intended purpose" may suggest inconsistency or arbitrariness, it is not enough to give rise to a reasonable inference of dishonesty.  Unlike in *Enomoto*, 624 F. Supp. 2d 443, *Marcus v. Dennis*, No. 1:21-cv-01085, 2022 WL 1527524 (E.D. Va. May 13, 2022), and *In re Capital One 360 Savings Account Interest Rate Litigation*, 779 F. Supp. 3d 666 (E.D. Va. 2024), the more limited allegations here cannot reasonably imply wrongful intent or deceit.  Thus, the amended complaint does not plausibly claim bad-faith dishonesty.

9

### ii. But the Amended Complaint Does Plausibly Claim Bad-Faith Exercise of Contractual Discretion

But Eastwood does plead facts sufficient, at this stage of the proceedings, to bring a claim for breach of GFFD by bad-faith exercise of contractual discretion.  In its amended complaint, Eastwood alleges that

> Sprint acted arbitrarily and unfairly in exercising any discretion afforded to it under Section IX(a) of the Agreement to determine that due to 'changed circumstances' the Premises are 'no longer suitable for their intended purpose' because T-Mobile actively maintains another lease on the Premises for the exact same purpose—operating telecommunications equipment.

(Dkt. No. 21-1 at ¶ 26 (quoting Lease Agreement 9, Dkt. No. 1-1).)  Eastwood explains that Sprint exercised its discretion in bad faith—unfairly and arbitrarily—to determine whether "changed circumstances" had rendered the premises "no longer suitable for their intended purpose."  (Dkt. No. 23 at 3.)

The court finds the reasoning in *Stoney Glen, LLC v. Southern Bank & Trust Co.*, 944 F. Supp. 2d 460 (E.D. Va. 2013), instructive. There, the Eastern District found that the plaintiff sufficiently alleged that the defendant breached GFFD by failing to follow usual and prudent banking practices in its discretionary termination of a Debt Settlement Agreement (DSA).  *Id.* at 469.  The court surveyed the caselaw and reasoned,

> [A]ll these cases hold that, where a contractual right has accrued, its exercise cannot be a breach of the implied duty of good faith and fair dealing.  None of these cases speak to whether the implied duty of good faith and fair dealing requires a party to be reasonable in ascertaining whether a contractual right has accrued.  Because the accrual of Defendant's right to terminate the DSA was not committed to the occurrence of an objective, undisputed fact, but was rather committed to Defendant's "determin[ation] or discover[y] that the Affidavit contained a material misrepresentation or omission," this case is more similar to *Virginia Vermiculite*.  There, the mining of land was committed to the discretion of a mining company; here, the review of financial

10

documents is committed to the discretion of a bank. Defendant's argument at the hearing that "it could have flipped a coin" is undermined by the holding in *Virginia Vermiculite*: the mining company could not decide to not mine land, and instead put the land in a trust, simply to get an advantage over a competitor. Both the deliberations there and here were committed to experts and were antecedent to the exercise by the expert of a purported right—to mine or not mine, or to consummate or not consummate a settlement. A party to a contract can flip a coin to decide whether to exercise an accrued right, but cannot flip a coin to determine whether a right has accrued.

*Id.* at 468–69 (footnote omitted) (discussing *Va. Vermiculite*, 156 F.3d at 542).

Here, Eastwood's claim parallels the claim in *Stoney Glen*: The accrual of Sprint's right to terminate the Agreement was not committed to the occurrence of an objective, undisputed fact, but rather was committed to Sprint's determination that "changed circumstances" rendered the premises "no longer suitable for their intended purpose" of operating telecommunications equipment. (Dkt. No. 23 at 3.) Claiming to make this determination while simultaneously continuing to operate telecommunications equipment on the premises gives rise to a reasonable inference of Sprint's bad faith.

Sprint relies on *Skillstorm, Inc. v. Electronic Data Systems, LLC*, 666 F.Supp.2d 610 (E.D. Va. 2009), to argue that "Sprint had an express contractual provision allowing it to exercise a right to not renew the Lease." (Dkt. No. 22 at 5–6.) But the contract at issue in *Skillstorm* expressly allowed the defendant to terminate "for any reason without penalty upon written notice." 666 F.Supp.2d at 620. Here, the issue is not whether the lease provided a right to termination, but whether Sprint exercised that right in bad faith. And, by contrast to the contract in *Skillstorm*, this lease did not allow termination for any reason; rather, Section IX(a) permitted termination only if Sprint determined that "changed circumstances" made the premises "no longer suitable for their intended purpose." (Lease Agreement 9, Dkt. No. 1-1.) Continuing to

use the premises for the same purpose after claiming to have made this determination plausibly alleges bad faith.

In summary, Eastwood's amended complaint does not purport to state a standalone claim for breach of GFFD.  Rather, Eastwood states a claim for breach of contract based on GFFD.  And, while the amended complaint does not contain adequate allegations that Sprint breached GFFD by dishonest conduct in the exercise of clear contractual rights, it does adequately plead that Sprint breached GFFD by bad-faith exercise of contractual discretion.

IV. CONCLUSION

Eastwood properly states a claim for breach of contract on a theory of breach of the implied covenant of good faith and fair dealing by bad-faith exercise of contractual discretion, so its case may proceed on this theory, and its motion for leave to file an amended complaint (Dkt. No. 21) will be granted.  *See* Fed. R. Civ. P. 15.  A consistent order will be issued.

Entered: June 30, 2026.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge